UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CELESTE CASTILLO, et al., | Case No. 24-cv-06898-RMI |
| Plaintiffs, | |
| v. | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| AMOS MICHAEL FARAON, et al., | Re: Dkt. No. 42 |
| Defendants. | |

Now pending before the court is the Motion for Summary Judgment ("Motion") filed by Plaintiffs Celeste Castillo, Natacha Damphousse, and Agustin Arganaraz against Defendants Reed Mountain Pharms LLC ("RMP") and Amos Michael Faraon. (Pls.' Mot., Dkt. 42.) Only Defendant Faraon filed a response.[1] (Dkt. 43.) Plaintiffs filed a reply. (Dkt. 44.) For the reasons stated below, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

This is a simple case of an employer failing to pay his employees. Plaintiffs are foreign nationals who traveled to Humboldt County to work for Defendants. (Compl. ¶ 2.) Plaintiffs were hired by Defendant Faraon and, between October and November 2023, worked on his cannabis farm near Reed Mountain in Humboldt County, California. (Pls.' Mot. 1, Dkt. 42.) Defendant RMF had valid cannabis licenses during Plaintiffs' employment.[2] Each of the three Plaintiffs were

---

[1] Defendant RMF is a suspended corporation. (Dkt. 42 at 2.)

[2] Defendants' cannabis licenses were valid from October 7, 2019, through October 7, 2025. *See, e.g.*, *License Information for Reed Mountain Pharms, Inc.*, CAL. DEP'T CANNABIS CONTROL, https://search.cannabis.ca.gov/ (searching for "Reed Mountain Pharms, Inc.") (last visited Mar. 12, 2026).

United States District Court
Northern District of California

offered employment conducting "all the necessary farming activities to grow the cannabis plants from seeding to trimming" to get Defendant Faraon's cannabis to market. (*Id.*) At the end of Plaintiffs' employment in early November 2023, Defendant Faraon refused to pay Plaintiffs the wages that they were owed, alleging that he had no liquidity. (*Id.*; Compl. ¶ 7.)

*Plaintiff Celeste Castillo*

Plaintiff Castillo worked a total of 141 hours on Defendant Faraon's farm. (Pls.' Mot. 1, Dkt. 42; Castillo Decl. Ex. A, Dkt. 42-2.) She declares that she started work on October 17, 2023, and ended work on November 1, 2023. (Castillo Decl. ¶ 6.) She stated that Defendant Faraon verbally promised to pay her $20.00 per hour for farming work and $70.00 per pound of cannabis processed. (*Id.* ¶ 3.) She declares that she is owed $18.04 as a piece hourly rate, $2,020.00 in regular wages, $796.39 in overtime wages, $1,736.00 in minimum wage liquidated damages, $796.39 in overtime liquidated damages, $5,808.21 in "wait time penalties" under California Labor Code § 203, and 10% interest per year over two years of delayed wages totaling $563.28. (*Id.* ¶ 8.)[3] A spreadsheet attached to her declaration reports the following totals for Plaintiff Castillo:

| Regular Wages Owed | Overtime Wages Owed | Wait Time Penalties | Interest |
|---|---|---|---|
| $2,020.00 | $796.39 | $5,808.21 | $563.28 |

*Plaintiff Natacha Damphousse*

Plaintiff Damphousse worked a total of 180.5 hours on Defendant Faraon's farm. (Pls.' Mot. 1, Dkt. 42; Damphousse Decl. Ex. A, Dkt. 42-3.) She declares that she started work on October 17, 2023, and ended work on November 3, 2023. (Damphousse Decl. ¶ 7.) She was promised $20.00 per hour for farming work and $70.00 per pound of cannabis processed. (*Id.* ¶ 4.) She declares that she is owed $3,852.00 in regular wages, $2,005.05 in overtime wages, $2,077.00 in minimum wage liquidated damages, $2,005.05 in overtime liquidated damages, $10,348.66 in

---

[3] There is a discrepancy between the amounts reported in Plaintiffs' Motion and Plaintiff Castillo's declaration. The Motion reports that she is owed $2,816.39 in back wages and $2,532.39 in minimum wage liquidated damages, while she declares that she is owed $2,020.00 in back wages and $1,736.00 in minimum wage liquidated damages. (Pls.' Mot. 8; Castillo Decl. ¶ 8, Dkt. 42-2.)

United States District Court
Northern District of California

United States District Court
Northern District of California

"wait time penalties" under California Labor Code § 203, and 10% interest per year over two years of delayed wages totaling $1,185.80. (*Id.* ¶ 9.)[4] A spreadsheet attached to her declaration reports the following totals for Plaintiff Damphousse:

| Regular Wages Owed | Overtime Wages Owed | Wait Time Penalties | Interest |
|---|---|---|---|
| $3,852.00 | $2,005.05 | $10,348.66 | $1,185.80 |

*Plaintiff Agustin Arganaraz*

Plaintiff Arganaraz worked a total of 176 hours on Defendant Faraon's farm. (Pls.' Mot. 1, Dkt. 42; Arganaraz Decl. Ex. A, Dkt. 42-3.) He declares that he started work on October 17, 2023, and ended work on November 3, 2023. (Arganaraz Decl.¶ 7.) He was promised $20.00 per hour for farming work and $70.00 per pound of cannabis processed. (*Id.* ¶ 4.) He declares that he is owed $2,235.00 in regular wages, $768.28 in overtime wages, $2,232.00 in minimum wage liquidated damages, $762.28 in overtime liquidated damages, $5,587.50 in "wait time penalties" under California Labor Code § 203, and 10% interest per year over two years of delayed wages totaling $600.66. (*Id.* ¶ 9.)[5] A spreadsheet attached to his declaration reports the following totals for Plaintiff Arganaraz:

| Regular Wages Owed | Overtime Wages Owed | Wait Time Penalties | Interest |
|---|---|---|---|
| $2,235.00 | $768.28 | $5,587.50 | $600.66 |

*Defendant Faraon's Failure to Pay Plaintiffs*

Plaintiffs submit evidence that, after they had completed their work for Defendant Faraon on his farm, they were in correspondence with him via text, (Castillo Decl. ¶ 7; Damphousse Decl.

---

[4] There is a discrepancy between the amounts reported in Plaintiffs' Motion and Plaintiff Damphousse's declaration. The Motion reports that she is owed $5,929.00 in back wages and $4,082.05 in liquidated damages, while she declares that she is owed $3,852.00 in back wages and $2,077.00 in minimum wage liquidated damages. (Pls.' Mot. 8; Damphousse Decl. ¶ 9, Dkt. 42-3.)

[5] There is a discrepancy in two amounts in Plaintiffs' Motion and Plaintiff Arganaraz's declaration. The Motion reports that he is owed $3,033.28 in liquidated damages and the same amount in back wages, while he declares that he is owed $2,235.00 in back wages and $2,232.00 in minimum wage liquidated damages. (Pls.' Mot. 8; Arganaraz Decl. ¶ 9, Dkt. 42-1.)

¶ 8), and that he responded that he had no money; for example, he wrote to Plaintiff Damphousse as follows: "I don't have any money or product and the market is still terrible. I'm trying to find investors because I don't have money for a business this year." (Damphousse Decl. ¶ 8, Dkt. 42-3.) Plaintiffs attached photos of Defendant Faraon on vacation and partying during the winter and summer after their employment on his farm, (Damphousse Decl. Ex. B, Dkt. 42-3), to support their allegation that he "enjoys a life that does not match the life of a person who is broke." (Damphousse Decl. ¶ 12.)

*July 2024 PAGA Letter*

Plaintiffs' Seventh Claim is brought under the Private Attorney General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, against both Defendants. The basis for relief is the willful misclassification of Plaintiffs as independent contractors in violation of section 226.8 of the California Labor Code. (Dkt. 42-4, "Ex. A" at 3.) On July 24, 2024, Plaintiffs' counsel Carlos Jato filed a PAGA letter with the State of California Labor and Workforce Development Agency ("LWDA") and on the same day mailed the letter to Defendants to exhaust administrative requirements for Plaintiffs' PAGA cause of action. (Jato Decl. ¶ 3, Dkt. 42-4; Jato Decl. Ex. A.) The letter first provides the criteria for independent contractor status under California Labor Code § 2750.5.[6] Next, the letter argues that Plaintiffs were not within those criteria, and that Defendant Faraon was using independent contractor status as a "subterfuge" to avoid paying Plaintiffs for their work on his farm. (Jato Decl. Ex. A, at 2.) The letter then outlines Defendants' failure to pay Plaintiffs overtime wages, failure to pay wages due at termination, failure to give proper wage stubs, and failure to provide meal and rest breaks, and the penalties associated with these failures. (*Id.* at 3–5.)

---

[6] These criteria include the following: that the individual has the "right to control and discretion as to the manner of performance of the contract," is "customarily engaged in an independently established business," and that the individual's contractor status is "bona fide" and "not a subterfuge to avoid employee status," as evidenced by cumulative factors such as substantial investment other than personal services in the business, holding out the business for oneself, control over the time and place the work is performed, intent to work as an independent contractor, and supplying tools that employees would customarily use to do the work. (Jato Decl. Ex. A, at 2.)

*Motion for Summary Judgment*

On December 12, 2025, Plaintiffs moved for summary judgment against both Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking judgment on all seven claims in their Complaint.[7] Plaintiffs' Motion argues that Plaintiffs were mischaracterized as contractors instead of employees and therefore they must prevail on their PAGA claim, that the wages and penalties owed under their other causes of action are undisputed, and that where the employer fails to maintain adequate records, as in this case, then "imprecise evidence" can provide a sufficient basis for damages. (Dkt. 42 at 9.)

In the Complaint, filed on October 2, 2024, Plaintiffs assert seven causes of action, including a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203, for minimum wage or overtime pay, and six other causes of action under California State Law. (Compl., Dkt. 1.)[8] Plaintiffs invoke subject matter jurisdiction pursuant to the FLSA and diversity jurisdiction. (Compl. ¶¶ 1–2.) Defendant RMP did not oppose the pending Motion as it is a suspended corporation, while Defendant Faraon filed an opposition. (Dkt. 43.) However, that opposition did not dispute the facts and evidence put forth by Plaintiffs.

## LEGAL STANDARDS

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[7] Plaintiffs also moved to strike Defendant RMP's pleading and asked that Plaintiffs' Motion be "construed as a default prove-up as to the damages to be assessed" against RMP because RMP is a suspended corporation. (Pls.' Mot. at ii, Dkt. 42.)

[8] Plaintiffs' causes of action are as follows: a claim asserting violation of the FLSA, 29 U.S.C. § 203 ("First Claim") (Compl. ¶¶ 8–11); a claim asserting failure to pay overtime wages pursuant to California Labor Code § 510 and § 1198 ("Second Claim") (Compl. ¶¶ 12–16); a claim asserting failure to pay minimum wages pursuant to California Labor Code § 510 and § 1194 ("Third Claim") (Compl. ¶¶ 17–20); a claim asserting late payment of wages pursuant to California Labor Code § 201-203 ("Fourth Claim") (Compl. ¶¶ 21–23); a claim against Defendant Faraon asserting violation of California Labor Code § 558.1 ("Fifth Claim") (Compl. ¶¶ 24–26); a claim asserting violations of California Business and Professions Code § 17203 ("Sixth Claim") (Compl. ¶¶ 27–30); and a claim asserting violation of PAGA ("Seventh Claim") (Compl. ¶¶ 35–36). Plaintiffs seek damages and penalties, interest, and attorneys' fees and costs. (Compl. at 7.)

United States District Court
Northern District of California

(1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252 (1986). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr*., 630 F.3d 794, 798–99 (9th Cir. 2010) (alterations in original) (quoting *Celotex*, 477 U.S. at 322); *see also Wallace v. City of San Jose*, 799 F. App'x 477, 479 (9th Cir. 2020) (upholding summary judgment where "appellants fail to identify any genuine dispute of material fact with regard to their claim that the City took an improper FLSA credit.").

## DISCUSSION

Plaintiffs move for summary judgment in their favor as to all claims. The court first addresses Plaintiffs' FLSA claims before turning to the claims they bring under the California

Labor Code.

### 1. FLSA

Plaintiffs' First Claim alleges that Defendants violated sections 206(a) and 207(a) of the FLSA by failing to pay minimum wages and overtime wages. (Compl. ¶¶ 7–10.) To establish a minimum-wage violation under section 206(a) or an overtime violation under section 207(a) of the FLSA, a plaintiff must establish three elements: "(1) she was an employee of Defendants, (2) she was covered under the FLSA, and (3) Defendants failed to pay her minimum wage or overtime wages." *Novoselac v. Vuzem*, No. 21-CV-08654-BLF, 2023 WL 3899011, at *4 (N.D. Cal. June 7, 2023) (quoting *Smith v. Nov. Bar N Grill LLC*, 441 F. Supp. 3d 830, 834 (D. Ariz. 2020)).

The FLSA sets out nationwide wage and hour standards, but it does not cover all employers or employees. "Employment may be covered under the Act pursuant to either 'individual' or 'enterprise' coverage." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985); *accord Zorich v. Long Beach Fire Dep't & Ambulance Serv., Inc.*, 118 F.3d 682 (9th Cir. 1997) (holding that "the FLSA covers employees both individually and through their employers."). "Enterprise coverage" applies to businesses with employees that engage in commerce or handle goods that moved in interstate commerce and which make an annual gross revenue of at least $500,00, as well as to certain institutions like hospitals, schools, and public agencies. 29 U.S.C. § 203(s)(1). For "individual coverage" to apply under the FLSA, an employee must have been (1) "engaged in commerce" or (2) "engaged in the production of goods for commerce." 29 U.S.C. § 207(a).

Commerce is defined by the FLSA as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). To determine whether an employee is engaged in commerce, "[t]he test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). The Supreme Court and courts in the Ninth Circuit have distinguished "between those who move goods interstate and those who merely handle goods locally *after* they were moved interstate," finding that moving

7

goods into interstate commerce is covered under the FLSA while "strictly intrastate, local handling of goods is insufficient to establish an individual's engagement in commerce." *Leyva v. Avila*, 634 F. Supp. 3d 670 (D. Ariz. 2022) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943)); *accord Donovan v. Scoles*, 652 F.2d 16 (9th Cir. 1981) ("goods that originally moved in interstate commerce, but that came to rest within the state prior to intrastate handling and sale, los[e] their interstate character and employees involved in the intrastate distribution of such goods [are] not engaged in commerce"). The employee bears the burden of establishing coverage, whether individual or enterprise. *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946).

Plaintiffs allege in their Complaint that through Defendant Faraon's solicitation of their work, he was "engaged in commerce [or] in the production of goods for commerce." (Compl. ¶ 9.) Not so. Plaintiffs did not participate in the interstate movement of persons or goods in their work on Defendant Faraon's rural cannabis farm; in fact, the goods that they sold could not have been sold legally outside of California. *See Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, No. C20-5661 BHS, 2023 WL 1798173, at *13 (W.D. Wash. Feb. 7, 2023) ("Congress has clearly stated its intent for no interstate cannabis market to exist"); *see also* 21 U.S.C. § 812(c)(10). While they may have utilized goods that had moved in interstate commerce during their work on the farm, this alone does not establish that Plaintiffs engaged in commerce. Thus, Plaintiffs cannot show that they were engaged in commerce for purposes of establishing individual coverage under the FLSA. *Lamont*, No. 99 CIV. 12482 (JSM), 2001 WL 521815, at *4. Plaintiffs have not submitted any evidence that would contradict this analysis in support of individual coverage nor provided any facts to establish enterprise coverage under the FLSA. In fact, the evidence uniformly points towards the conclusion that Defendants do *not* meet the requirements for enterprise coverage. Given that there is no contradictory evidence introducing a question of material fact as to coverage, and that FLSA coverage has not been established, the court DENIES Plaintiffs' Motion for Summary Judgment and *sua sponte* GRANTS summary judgment for Defendant Faraon on the FLSA claims. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) ("We have long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary

judgment *sua sponte* for the nonmoving party"), *disagreed with on other grounds by Perttu v. Richards*, 605 U.S. 460 (2025).

### 2. California Labor Code Claims

#### a. *PAGA Claim*

PAGA, California Labor Code § 2699 *et seq*., permits employees to recover civil penalties for violations of enumerated California Labor Code provisions. Plaintiffs move for summary judgment on their PAGA claim, which is premised on violations of California Labor Code § 226.8 (willful misclassification of individual as an independent contractor). (Pls.' Mot., Dkt. 42, at 2, 3–10.)[9] Plaintiffs use the "ABC test"[10] to determine that an employment relationship existed between Plaintiffs and Defendant Faraon during the relevant time-period. (Pls.' Mot., Dkt. 42, at 6–9.)

Defendant Faraon argues that Plaintiffs failed to submit evidence demonstrating that he is personally liable and fail to show that he "willfully and knowingly" misclassified Plaintiffs as independent contractors. (Def.'s Resp., Dkt. 43, at 1.) In their reply, Plaintiffs recount their verbal agreement with Defendant Faraon for employment; provide that Defendant Faraon admits that he was an officer of RMP, his corporation; argue that he "undisputedly" controlled Plaintiffs' wages, working hours, and working conditions; and reassert that he "willfully and knowingly" misclassified Plaintiffs as independent contractors. (Pls.' Reply, Dkt. 44, at 2–8.) Plaintiffs also assert that the damages claimed by each Plaintiff remain undisputed and that "no actual evidence has been submitted to contradict the total hours and wages claimed by each plaintiff." (*Id.* at 8.)

California Labor Code Section 226.8

Section 226.8 of the California Labor Code makes it unlawful for any employer to willfully misclassify an employee as an independent contractor. Plaintiffs may not assert a direct

---

[9] While the PAGA letter discusses multiple alleged labor code violations, the basis of the pending Motion appears to be the alleged violation of § 226.8, and so the court analyzes the PAGA claim with respect to that underlying violation only. Plaintiffs' PAGA claim is timely as Plaintiffs mailed the letter on July 24, 2024, which was well within one year of Plaintiffs' last date of employment with Defendants in early November 2023. (*E.g.*, Pls.' Mot. 5.) Furthermore, there is no evidence that Defendants responded to the letter to seek to cure the violations noted therein. (Jato Decl. Ex. A, Dkt. 42-4.)

[10] The "ABC" test under *Dynamex Operations W. v. Superior Ct.*, 416 P.3d 1, 7 (Cal. 2018) is discussed further below.

private right of action under this section, but they may seek civil penalties for a violation of this section under PAGA. *Noe v. Super. Ct.,* 187 Cal. Rptr. 3d 836, 857 (Cal. Ct. App. 2015). An employer who is liable for willful misclassification is liable for civil penalties of not less than $5,000 and not more than $15,000. Cal. Lab. Code § 226.8(a). An employer who engaged in a pattern or practice of willfully misclassifying employees is subjected to a civil penalty of no less than $10,000.00 and no more than $25,000.00. Cal. Lab. Code § 226.8(c).

Employer-Employee Relationship Under California Law

While California law recognizes multiple tests for identifying an employer-employee relationship under the California Labor Code, the "ABC" test should be applied to most California state law claims, including the claims at issue here. *Holandez v. Ent., LLC*, No. 21-cv- 01755, 2023 WL 8353757, at *8 (C.D. Cal. Oct. 27, 2023). The ABC test presumptively considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies each of three conditions: "(a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; (b) that the worker performs work that is outside the usual course of the hiring entity's business; and (c) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." *Dynamex Operations W. v. Superior Ct.*, 416 P.3d 1, 7 (Cal. 2018). It is thus Defendant Faraon's burden to demonstrate that each of the above three prongs have been met.

Under the first prong of the ABC test, a worker is an employee unless the hiring entity establishes "that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact." *Dynamex*, 416 P.3d at 34. "[D]epending on the nature of the work and overall arrangement between the parties, a business need not control the precise manner or details of the work in order to be found to have maintained the necessary control that an employer ordinarily possesses over its employees, but does not possess over a genuine independent contractor." *Id.* at 36 (internal citations omitted). The key inquiry here "is not how much control a hirer exercises, but how much

United States District Court
Northern District of California

control the hirer retains the *right* to exercise." *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 172 (Cal. 2014).

Defendant Faraon fails to establish that the workers here were free from his control over their manner of work performance. Indeed, the uncontroverted evidence shows that during Plaintiffs' employment, Defendant Faraon drove Plaintiffs to the farm each day and provided them with precise daily instructions as necessary to ensure that the production went smoothly; though instructions were occasionally delivered by Defendant Faraon's subordinate, they appear to have originated with Defendant Faraon, who ran operations at the farm. (*See, e.g.*, Damphousse Decl. ¶¶ 5–6 ("We understood at all times that [Defendant Faraon] was our boss"); Arganaraz Decl. ¶ 6 ("We had no discretion as to what work to do as we were merely expected to follow instructions."); Pls.' Mot., Dkt. 42, at 7–8 (noting Plaintiffs' "manual [and] repetitive" work at Defendant Faraon's farm)). Defendant also corresponded with individual Plaintiffs about the job prior to being hired, and about compensation after their employment. (*See, e.g.*, Damphousse Decl. ¶ 8.) Defendant Faraon's opposition does not dispute any of these facts.

Thus, the court finds that no genuine dispute exists as to whether Defendant Faraon reserved the required amount of control and direction over Plaintiffs to establish an employment relationship under the first prong of the ABC test. *Cf. Salinas v. Cornwell Quality Tools Co.*, 635 F. Supp. 3d 979, 991 (C.D. Cal. 2022) (finding genuine dispute existed where purported employees were "free to sell products to . . . customers at any price and on any terms they choose" and were able to set their own schedules).

As to Prongs B and C, Defendant Faraon failed to provide evidence demonstrating that Plaintiffs performed work outside the usual course of business at his farm  or that Plaintiffs were customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for him. Defendant Faraon thus fails to establish each of the three prongs of the ABC test where he maintains the burden to prove all three. *Holandez*, 2023 WL 8353757, at *9; *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021) ("a finding of any prong against the hiring entity directs a finding of an employer-employee relationship."). Accordingly, the court finds that Plaintiffs have established the existence of an

11

employer-employee relationship as a matter of law.

<u>Willfulness Under Section 226.8</u>

While Plaintiffs have established that they were misclassified as independent contractors, section 226.8 only prohibits "willful" misclassification. Subdivision (i)(4) of section 226.8 defines "willful misclassification" to mean "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor." Cal. Lab. Code § 226.8(i)(4); *see also Provost v. YourMechanic, Inc.*, 269 Cal. Rptr. 3d 903, 906 n.2 (Cal. Ct. App. 2020). The statute therefore makes it unlawful for an employer to "engage in" the act of "voluntarily and knowingly misclassifying [an] individual as an independent contractor." *Noe*, 187 Cal. Rptr. 3d at 853.

Defendant Faraon argues in his opposition that there is "no evidence" that he "willfully and knowingly classified these plaintiffs as independent contractors." (Def.'s Resp. 4, Dkt. 43.) The court agrees that Plaintiffs provided no evidence that Defendant Faraon met the statutory definition of willfulness in his misclassification of Plaintiffs. Without this evidence, there is a triable issue of fact as to Defendant Faraon's willfulness in his misclassification of Plaintiffs as independent contractors instead of employees, and the court cannot determine the amount of damages that would be assessed under PAGA. *Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, No. 14-cv-56279, 2013 WL 12171957, at *8 (C.D. Cal. July 22, 2013) (finding that "although it is undisputed that Defendant misclassified Plaintiff, it has not been shown that Defendant knew it misclassified him at the time. As such, whether Defendant willfully misclassified Plaintiff when it hired him is a disputed issue"). Accordingly, Plaintiffs' Motion for Summary Judgment on their PAGA claim is GRANTED with respect to whether they were employees of Defendant Faraon, and DENIED with respect to the issue of whether Defendant Faraon's misclassification of Plaintiffs was willful.

### b. *Defendants' Joint and Individual Liability*

Essentially, Defendant Faraon's entire opposition to the pending Motion is that Plaintiffs cannot pierce the corporate veil and hold him personally liable as the owner/director of RMP. (Def.'s Resp. 3, Dkt. 43.) But Plaintiffs have asserted individual liability against Defendant Faraon

12

via their Fifth Claim, which the court reads to be not a stand-alone claim, but rather an avenue for bringing their remaining California Labor Code claims against Defendant Faraon and RMP.

Plaintiffs' Fifth Claim is based on Defendant Faraon's alleged violation of California Labor Code § 558.1. (Compl. ¶ 26.) Section 558.1 "extends liability to an 'owner, director, officer, or managing agent of the employer' who 'violates, or causes to be violated,'" certain sections of the Labor Code, including some provisions at issue in this case. *See Rios v. Linn Star Transfer, Inc.*, Case No. 19-cv-07009-JSC, 2020 WL 1677338, at *5 (N.D. Cal. Apr. 6, 2020) (quoting Cal. Lab. Code § 558.1(a), (b)). The California Labor Code provides that

> [a]ny employer or other person acting on behalf of any employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

Cal. Lab. Code § 558.1(a). It defines "other person acting on behalf of an employer" as "a natural person who is an owner, director, officer, or managing agent of the employer." Cal. Lab. Code § 558.1(b).

For the employer's owner to be held personally liable for California Labor Code violations, he

> must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the "owner" may be deemed to have contributed to, and thus for the purposes of this statute, "cause[d]" a violation.

*Usher v. White*, 729 Cal. Rptr. 3d 281, 291 (Cal. Ct. App. 2021). While "an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation" to have "caused" a violation of the Labor Code, "that does not necessarily mean the individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged employment policies or specifically approved their implementation." *Espinoza v. Hepta Run, Inc.*, 289 Cal. Rptr. 3d 145, 156 (Cal. Ct. App. 2022). "[T]o be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations." *Id.*;

*accord Keene v. Penske Truck Leasing Co. LP*., No. 22-cv-8715, 2023 WL 1478439, at *2 (C.D. Cal. Feb. 2, 2023) (analyzing whether defendant employee was subject to individual liability under California Labor Code section 558.1).

Section 558.1(a) Creates Individual Liability for the Alleged Labor Code Violations

California Labor Code section 558.1(a) extends to each of the Labor Code sections under which Plaintiffs bring their claims—sections 510 and 1198 (Second Claim), section 1194 (Third Claim), and sections 201–203 (Fourth Claim). *See* Cal. Lab. Code § 558.1(a) (holding liable an employer who violates Sections 203 and 1194 of the California Labor Code); *see also Russo v. Fed. Med. Servs., Inc*., No. 24-CV-00748-PCP, 2025 WL 257607, at *2 (N.D. Cal. Jan. 21, 2025) ("In sum, Section 558.1(a) provides a cause of action for individual liability for violations of Sections 1182.12, 1197, 510, 1198, and 512 of the Labor Code."). Thus, section 558.1(a) provides a cause of action for individual liability for violations of sections 1194, 510, 1198, and 203 of the California Labor Code.

Here, as established above, Defendant Faraon was Plaintiffs' employer. Defendant Faraon was responsible for employment policies and decisions, including scheduling Plaintiffs' day-to-day tasks. (Damphousse Decl. ¶¶ 5–6 ("We understood at all times that [Defendant Faraon] was our boss") Arganaraz Decl. ¶ 6 ("We had no discretion as to what work to do as we were merely expected to follow instructions."); Pls.' Mot., Dkt. 42, at 7–8 (noting Plaintiffs' "manual [and] repetitive" work at Defendant Faraon's farm)).[11] Thus, Defendant Faraon and Defendant RMP can both be held liable for the Labor Code violations alleged in Plaintiffs' Complaint.

    *c.*   *Second Claim: Failure to Pay Overtime Wages*

Plaintiffs submitted evidence in support of their Second Claim demonstrating that Defendants violated sections 510 and 1198[12] of the California Labor Code by failing to pay

---

[11] Additionally, as shown above, Defendant Faraon owned and operated RMP, and kept cannabis licenses and the corporate entity in his name. (*See, e.g.,* Jato Decl. ¶ 8, Dkt. 42-4; Jato Decl. Ex. C (listing Defendant Faraon as the individual "Agent" on the Reed Mountain Pharms, Inc. California Secretary of State corporate records database); *see also* Jato Decl. ¶ 7 (showing the California Department of Cannabis Control license report with Lic. No. CCL19-0000268, Department of Cannabis Control, Reed Mountain Pharms, Inc., listing Amos Faraon under "Business Information").)

[12] California Labor Code § 1198 provides that "[t]he maximum hours of work and the standard conditions of

14

overtime wages, and they seek damages for these alleged violations. (Pls.' Mot., Dkt. 42, at 8–9; Arganaraz Decl. ¶¶ 8–9, Dkt. 42-1; Damphousse Decl. ¶¶ 8–9, Dkt. 42-3; Castillo Decl. ¶¶ 6–8, Dkt. 42-2.) Plaintiffs argue that "Defendants have the burden to show they maintained law mandated time records," and that where the employer fails to maintain the records required, the burden shifts to plaintiffs to provide their "best estimate" of hours worked. (Pls.' Mot. 10–11.) Defendant Faraon did not put forth additional evidence or records but claims to be entitled to the "protections of corporate status" though his corporation is suspended. (Def.'s Resp., Dkt. 43, at 2.) Plaintiffs' Motion contends that the evidence is uncontradicted that Defendants failed to properly pay Plaintiffs for the time they allegedly worked beyond eight-hour days. Plaintiffs move for summary judgment on this issue and seek appropriate damages under California Labor Code §§ 510 and 1198.

"Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510. However, for agricultural employees employed by an employer with 25 or fewer employees in 2023, the required overtime rate of one and one-half times the regular rate of pay applies to any work performed "over nine hours in any workday or over 50 hours in any workweek." Cal. Lab. Code § 860(b).

Plaintiffs established that they worked overtime on Defendant Faraon's farm, and that he refused to pay them for *any* of their work, including paying them the legally required rates for their overtime work. (Arganaraz Decl. Ex. A, Dkt. 42-1 (reporting frequently working overtime); Damphousse Decl. Ex. A, Dkt. 42-3 (same); Castillo Decl. Ex. A, Dkt. 42-2 (same).) Defendant Faraon failed to respond with evidence (like employment records) of any kind to refute Plaintiffs' claims and does not dispute that he did not pay Plaintiffs any wages. Defendant raises no genuine

labor fixed by the [Industrial Welfare] commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Cal. Lab. Code § 1198.

dispute of material fact suitable for resolution at trial with respect to Plaintiffs' overtime claim under the California Labor Code. Thus, Defendants are jointly and severally liable for violations of California Labor Code §§ 510 and 1198. Accordingly, Plaintiffs' Motion for Summary Judgment on their overtime claim is GRANTED.

### d. _Third Claim: Failure to Pay Minimum Wages_

In their Third Claim, Plaintiffs allege that Defendants violated Labor Code §§ 510, 1194, and 1197, claiming that "Defendants failed and refused to pay plaintiffs the agreed upon wages for the regular hours they worked. This in turn also means that defendants failed to compensate plaintiffs for the California law mandated minimum wage at the time the work took place." (Compl. ¶ 18.) For relief, Plaintiffs request not only the unpaid minimum wages but also "an equal amount of liquidated damages plus reasonable attorney's fees and costs." (Compl. ¶ 20.)

It is unlawful in California to pay an employee a lower wage than the fixed minimum wage.[13] Cal. Lab. Code § 1197. Under California Labor Code § 1194(a), "any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Any employer who pays an employee less than the applicable minimum wage is subject to "a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203." Cal. Lab. Code § 1197.1. Finally, employees bringing an action to recover wages under sections 1197.1 or 1194 are "entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a).

Plaintiffs have established that Defendant Faraon refused to pay them the wages they were owed for their work on his farm. (_See, e.g.,_ Arganaraz Decl. Ex. A, Dkt. 42-1.) As explained above, Defendant Faraon has submitted no evidence disputing that he did not pay Plaintiffs any wages. Defendant thus raises no genuine dispute of material fact suitable for resolution at trial with respect to Plaintiffs' minimum wage claim under the California Labor Code. Defendants are

---

[13] The minimum wage is determined by the Industrial Welfare Commission or by "any applicable state or local law." Cal. Lab. Code § 1197.

jointly and severally liable for violations of California Labor Code §§ 1197 and 1194. Plaintiffs' Motion for Summary Judgment on their overtime claim is therefore GRANTED.

### e. *Fourth Claim: Waiting Time Penalties*

In their Fourth Claim, Plaintiffs allege that Defendants violated California Labor Code §§ 201–203 by failing to pay Plaintiffs their wages in a timely fashion. Employers are required to promptly pay all earned and unpaid wages if an employee resigns or is discharged. Cal. Lab. Code §§ 201, 202, 203. Plaintiffs argue that Defendants' Labor Code violations were willful, such that Plaintiffs are entitled to recover "waiting time" penalties under § 203 and other penalties.

Section 201 of the California Labor Code provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). Section 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter." *Id.* § 202(a). Finally, section 203(a) provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with §§ 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Id.* § 203(a).

The settled meaning of "willful," as used in § 203, is that an employer has intentionally failed or refused to perform an act which was required to be done. Cal. Code Regs. tit. 8, § 13520; *see also Barnhill v. Robert Saunders & Co*., 177 Cal. Rptr. 803, 806 (Cal. Ct. App. 1981); *Amalgamated Transit Union Loc. 1309, AFL-CIO v. Laidlaw Transit Servs., Inc*., No. 05-cv-1199–IEG–CAB, 2009 WL 2448430, at *7 (S.D. Cal. Aug. 10, 2009) (failure to pay is willful "when an employer intentionally fails to pay wages to an employee when those wages are due."). "The employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Barnhill*, 177 Cal. Rptr. at 807. "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. tit. 8, § 13520.

Here, Plaintiffs establish that Defendant Faraon intentionally failed or refused to pay them wages as was required under the Labor Code. Defendant Faron does not deny that he "willfully" failed to pay Plaintiffs any wages and he does not argue that he has a "good faith" dispute that such wages were due.[14] Thus, Defendants are jointly and severally liable for violation of California Labor Code §§ 201–203. Accordingly, Plaintiffs' Motion for Summary Judgment on their claim for waiting time penalties is GRANTED.

### f. *Sixth Claim: Violation of the Business and Professions Code*

In their Sixth Claim, Plaintiffs state that under California Business and Professions Code § 17200, they are entitled to "equitable restitution of all sums unlawfully denied to [them]" and seek "an order requiring Defendants to disgorge all unlawful profits made as a result of the unfair/illegal business practices alleged herein, at least to the extent necessary to compensate them in full for monies owed to plaintiff[s] under the cited statutes." (Compl. ¶ 29.) Plaintiffs contend that "Defendant's violations of Labor Code §201, §202, §203, §221, §224, 226, 226.7, 510, 1198, 2802, 29 U.S.C. 201 et seq., constitute unlawful, illegal and unfair business practices in violation of California Business and Professions Code §17200 et seq." (Compl. ¶ 28.)

Section 17200 of the California Business and Professions Code sets out California's unfair competition law ("UCL"); under the UCL, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Therefore, there are three ways a claim may be established under § 17200. *Daro v. Superior Ct.*, 61 Cal. Rptr. 3d 716, 724 (Cal. Ct. App. 2007) ("a business act or practice need only meet one of the three criteria— unlawful, unfair, or fraudulent—to be considered unfair competition"); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability"). Given the disjunctive nature of the prongs, an action may be unfair even if it is not unlawful. *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999). Restitution and injunctive relief are generally the only remedies available under the UCL. *See Pineda v. Bank of Am., N.A.,* 241 P.3d 870, 878–79 (Cal. 2010) (holding that penalties

---

[14] Defendant Faraon's motion discusses "willfulness" in the context of misclassification of Plaintiffs with respect to Plaintiffs' PAGA claim, but not in this context.

for violation of Labor Code § 203 are not recoverable under the UCL); *see also Carter v. Golden Gate Freightliner Inc.,* No. 19-CV-02034-JSC, 2019 WL 5864576, at *6 (N.D. Cal. Nov. 8, 2019) (same).

Plaintiffs have demonstrated that Defendants violated section 17200 through their failure to pay Plaintiffs their wages and their other violations of California labor laws. *Cortez v. Purolator Air Filtration Products Co.*, 999 P.2d 706, 716 (Cal. 2000) ("[A]ny business act or practice that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair business practice."); *State Farm Fire & Casualty Co. v. Superior Ct.*, 53 Cal. Rptr. 2d 229, 234 (Cal. Ct. App. 1996) ("section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable" under the UCL (quoting *Farmers Ins. Exchange v. Superior Ct.*, 826 P.2d 730, 734 (Cal. 1992)).

While Plaintiffs appear to seek only restitution in their Sixth Claim, they are awarded identical damages for unpaid wages under Section 1194 and cannot collect these damages twice. (Compl. ¶¶ 29–30.) Defendant does not address the Sixth Claim. Plaintiffs' Motion for Summary Judgment is GRANTED as to this claim. Because, however, Plaintiffs also brought a successful claim under § 1194, damages will only be awarded under one claim to avoid duplication.

<strong>DAMAGES</strong>

### 1. PAGA Damages and Bench Trial

The court granted summary judgment as to all claims, save the issue of misclassification of the Plaintiffs as "willful" under the Labor Code. As such, Plaintiffs may be entitled to damages under PAGA following a bench trial. "District courts in this circuit have explained that equitable claims like PAGA . . . claims must be tried to the court, not to a jury." *Williams v. J.B. Hunt Transp., Inc.*, 2022 WL 22969376, at *2 (C.D. Cal. Dec. 15, 2022); *accord Hinds v. FedEx Ground Package Sys., Inc.,* 2022 WL 9496794, at *3 (N.D. Cal. Oct. 14, 2022). As noted above, the statutory maximum is $25,000 per Plaintiff. Cal. Lab. Code § 226.8(c).

### 2. California Labor Code Damages

Plaintiffs request damages in the form of back pay, liquidated damages, wait time penalties, and interest. They further separate their requested back pay and liquidated damages into

19

United States District Court
Northern District of California

unpaid regular wages, unpaid overtime wages, minimum wage liquidated damages, and overtime liquidated damages. The court must first assess the amount of unpaid wages. The court calculates the damages for the California Labor Code violations outlined above based on the undisputed facts presented. Where an employer fails to maintain payroll records properly, California courts shift the burden of calculating the number of uncompensated hours to the employer, reasoning that "applying the normal burden of proof in such circumstances would unfairly penalize an employee for the employer's failure to keep proper records and would allow the employer to keep the benefits of the employee's labors without paying full compensation." *Amaral v. Cintas Corp.* 78 Cal. Rptr. 3d 572, 597 (Cal. Ct. App. 2008). If the employer fails to produce such evidence, the "court 'may then award damages to the employee, even though the result be only approximate.'" *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)). Additionally, California law requires work completed beyond the hours of a regular workday to be compensated at a rate of "no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510.

Plaintiffs have submitted their declarations with attached spreadsheets in support of their damages claim, which contain their approximate hours worked as well as their agreed upon conditions of work. Each Plaintiff declares that Defendant Faraon promised to pay them $20 an hour for farming work, and $70 a pound for processing work after the harvest. Plaintiffs all worked for approximately two and a half weeks, from Tuesday, October 17, 2023, to Friday, November 3, 2023. (*E.g.*, Damphousse Decl. ¶ 7.) Each Plaintiff spent the first three to six days on farming work before spending the remaining work time "processing" the harvested marijuana. Plaintiffs' declarations included the number of pounds they processed as well as the number of hours they spent processing. The spreadsheets also break down the total hours worked into regular and overtime hours for each day, with overtime hours calculated according to Industrial Welfare Commission ("IWC") Order No. 4-2001 covering agricultural occupations. (Pls.' Mot. 9.) Finally, each Plaintiff's spreadsheet and declaration (as well as the Motion itself) contain their final estimates for their total unpaid wages, minimum wage liquidated damages, unpaid overtime wages, and overtime liquidated damages.

While the provision of the number of hours worked is helpful to the court in determining the unpaid actual wages and minimum wage damages, the information provided for Plaintiffs' overtime and piece rate work is legally and factually insufficient for this court's calculation of damages. First, Plaintiffs calculate their overtime hours using the overtime phase-in for agricultural workers, but they do not submit enough evidence to justify their classification as agricultural workers or their application of the phase-in. While the farming work falls under the definition of agricultural occupation, Cal. Code Regs. tit. 8, § 11140(2)(D), the "processing" and "trimming" work appears to occur after harvest and thus does not appear to fall under this definition, although it is difficult for the court to say with certainty given the lack of detail provided as to this type of work. Moreover, Plaintiffs state only that Defendant Faraon had "several other workers," (Damphousse Decl. ¶ 10), but do not provide a clear statement that Defendants employed 25 or fewer employees and would therefore be subject to the phase-in. Plaintiffs also provided the court with no legal authority as to how workers whose job duties span multiple industries—for example, agricultural occupations and industries preparing agricultural products for market—should be treated when the overtime requirements for those industries differ. Without this information, the court cannot determine how many hours of overtime each Plaintiff worked on each day.

Second, Plaintiffs do not cite to any real legal authority justifying their overtime calculations for their hours of piece-rate work. Plaintiffs' only citation is to a 1993 letter by the chief counsel of the Division of Labor Standards Enforcement ("DLSE") of the California Department of Industrial Relations, in which he advises the letter writer as to the calculation of the regular rate of pay for a worker who is paid both by hourly wage and by piece rate within a pay period; Plaintiffs implement the formula contained in the letter using the entirety of their work for Defendants and determine their regular rate of pay by dividing the total amount they should have earned by the number of non-overtime hours they worked. However, this approach is both legally and factually flawed. As an initial matter, the 1993 DLSE letter does not refer to any State regulation or law and instead appears to be a statutory interpretation, which is entitled to no deference under California law. *Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889, 894 (Cal.

2007) (holding that "[the DLSE's statutory] interpretations were entitled to no deference," but may be adopted by a court "if the court independently determines that the interpretation is correct"). Plaintiffs have not identified any law, regulation, or court case adopting or approving of this manner of calculating overtime pay for workers with mixed compensation packages to justify their use of the formula. They have also made no argument as to why the court should accept this calculation as correct. Next, Plaintiffs have not pointed to any authority justifying their use of the entire period of employment to determine their regular rate of pay—it is not clear to the court whether Plaintiffs contend that their employment is encompassed by one pay period or whether they instead have a basis for ignoring pay periods entirely in the calculation of their regular rate of pay.

Finally, the court is stymied from even beginning an attempt at working around these issues because Plaintiffs have not provided the formulas or calculations behind any of their totals and their total damages are different across the Motion, declarations, and spreadsheets. For example, the Motion requests $45,385.56 in its conclusion, but the amounts requested per Plaintiff earlier in the Motion add up to $45,490.50.[15] (Pls.' Mot. 8, 10.) In turn, the amounts requested per Plaintiff vary between the Motion and the declarations and spreadsheets. (*Compare* Damphousse Decl. ¶ 9 (requesting $21,473.56 in total damages), *with* Pls.' Mot. 8 (requesting $21,545.51 in damages for Plaintiff Damphousse).) The court should not have to contend with this type of discrepancy, and cannot resolve it in light of the factual and legal deficiencies described above.

The court cannot calculate the overtime damages because of the legal ambiguity and factual insufficiency of Plaintiffs' filings, and thus Plaintiffs have not shouldered their burden of proving up damages. After the bench trial on PAGA damages, Plaintiffs will be asked to submit additional briefing and evidence resolving these issues so that the court can calculate damages in this case.

---

[15] The Motion requests the following amounts per Plaintiff: Damphousse requests $21,545.51 ($5,929 + $4,082.05 + $10,348.66 + $1,185.8); Castillo requests $11,720.27 ($2,816.39 + $2,532.39 + $5,808.21 + $563.28); and Arganaraz requests $12,224.72 ($3,003.28 + $3,033.28 + $5,587.5 + $600.66). In total, $21,545.51 plus $11,720.27 plus $12,224.72 equals $45,490.50. This is the type of calculation breakdown that would have been helpful in Plaintiffs' Motion and spreadsheets.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment. Plaintiffs are entitled to damages, and to an award of reasonable attorney's fees and costs.

The parties, within thirty days of the date of this Order, shall meet and confer and file a joint statement with the court outlining the timing for holding a bench trial, further briefing on the damages, and filing a motion for attorney's fees.

**IT IS SO ORDERED.**

Dated: March 12, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California

23